IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James Holloway, #272791, | ) | C/A No. 5: 12-165-MGL-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Tim Riley, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Petitioner James Holloway ("Petitioner" or "Holloway") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 27, 28. On June 26, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 29. On July 31, 2012, Petitioner filed a response in opposition to Respondent's Motion for Summary Judgment. ECF No. 35. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 28, be granted.

I. Background

Petitioner is currently incarcerated in the Tyger River Correctional Institution of the South Carolina Department of Corrections ("SCDC"). ECF No. 1 at 1. In 2003, Petitioner was indicted at the December term of the McCormick County Grand Jury for murder (#2003-GS-35-0226). App. 112-13.[1] Prior to his jury trial, Petitioner's counsel sought to suppress the murder weapon and Petitioner's confession, arguing that the warrantless search and seizure of the gun violated the Fourth Amendment and that Petitioner had requested counsel before making a statement and that counsel had been denied at that time. App. 116. These motions were denied by the trial court. *Id.* On August 1, 2006, Petitioner appeared before the Honorable William P. Keesley, pleaded guilty as indicted and was sentenced to 30 years of confinement. App. 1-35. Petitioner did not file a direct appeal. App. 37.

II. Procedural History

On June 18, 2007, Petitioner filed an Application for Post-Conviction Relief ("PCR") (2007-CP-35-0065), alleging ineffective assistance of counsel and that his guilty plea was not knowingly, voluntarily, and intelligently given. App. 38. Specifically, Petitioner asserted the following allegations, recited verbatim, regarding his claims:

1) Trial Counsel was constitutionally ineffective and Applicant was prejudiced through counsel's failure to properly argue for suppression of evidence gained as a result of violations of Applicant's Fourth Amendment rights against unreasonable search and seizure.

   On pretrial motions to suppress trial counsel argued for suppression of a handgun recovered from a barn on Applicant's property, and a video taped statement made by Applicant as a result of the unreasonable search of

---

[1] Citations to "App." refer to the Appendix for Petitioner's direct appeal of his judgment of conviction. That appendix is available at ECF No. 27-1 in this habeas matter.

Applicant's property and the resulting seizure of the handgun. The court denied both motions.

Trial counsel's arguments on the issues were completely ineffectual. Had counsel been prepared, and had the issues been argued effectively, the court would have granted the motions and suppressed the handgun and the video taped statement. Had the challenged evidence been suppressed, Applicant would not have pleaded guilty and would have insisted on continuing the trial.

2) Applicant's guilty plea was not made knowingly, voluntarily and intelligently through trial counsel's ineffectiveness.

App. 42.

On August 7, 2007, the State filed a return requesting an evidentiary hearing; on September 1, 2009, an evidentiary hearing was conducted before the Honorable R. Knox McMahon. App. 59, 65. Petitioner was present and represented by Mary P. Miles, Esquire; Adam West Lee represented the State. *Id.* Petitioner's trial attorney, Lourie A. Salley, III, was the sole witness. App. 70-105. In an Order dated January 13, 2010 and filed January 20, 2010, the PCR court denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

### **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. §17-27-80 (2003).

*Failure to Properly Argue for Suppression of Evidence or Confession*

It was the Applicant's position at the PCR Hearing that Counsel did not effectively argue for suppression of certain evidence, including the murder weapon and a confession, given by the Applicant. Applicant admitted that Counsel made suppression motions on both the gun and the Applicant's statement, but testified that these motions were denied by the court. Applicant

testified that the grounds raised for suppression were that Applicant requested counsel before making a statement and counsel was denied him, and that the warrantless search and seizure of the gun was unreasonable and violated the fourth amendment.

Applicant asserted that Counsel should have argued that the Applicant was heavily under the influence at the time of his confession and that as a result it was not a voluntary statement. Applicant also asserted that, with respect to the search and seizure, Counsel should have argued that the person who gave the authorities consent to conduct their search and led them to the weapon did not have the authority to give such consent. Applicant argued that if Counsel had properly argued these motions, suppression would have been granted, and he would have proceeded to trial.

Counsel testified that he did in fact make the requested motions for suppression, but that those motions were denied. Counsel testified that he made his motion for suppression of the gun on the ground that the search and resulting seizure was unreasonable and violated the fourth Amendment. However, Counsel testified that at the suppression hearing the Applicant's son, who was the person who led authorities to the weapon, testified that his aunt and his grandmother, who was the actual property owner, told him to give the police the gun. Counsel also testified that the testimony of Robert Shorter, an officer involved in the investigation, corroborated this version of the facts. Counsel testified that based on those facts, the court found that the search was reasonable and denied his motion for suppression of the gun.

With respect to the statement, Counsel testified that he thought the confession carried the most weight in the case, and as a result he also tried to suppress it. Counsel also testified, however, that it was again the Court's decision to deny his motion.

With respect to this claim, this Court finds that the Applicant has failed to meet his burden of proof. This Court finds that Counsel's testimony that he made the motions in question to be credible, as it is supported by the Applicant's own testimony. At the same time, this Court also finds the Applicant's testimony on the issue not to be credible. This Court finds that the lower court had all the necessary information before it in making its decision to deny the suppression motions, and that as a result, the Applicant can prove neither ineffective assistance of counsel nor resulting prejudice. Accordingly, this claim is denied and dismissed.

*Involuntary Guilty Plea*

It was Applicant's testimony that he would not have pled guilty but for Counsel's ineffective representation. It was Counsel's testimony that while the Applicant did not initially want to plead guilty, after the suppression motions were denied, it was the Applicant's desire to enter a plea, and that he had full knowledge of the implications of the entry of his guilty plea prior to its entry.

The guilty plea transcript is informative. The Applicant [testified] that he was not under the influence of any alcohol, drugs or medication, and that he did not suffer from any physical or mental conditions which affected his ability to understand. (Tr. p. 3, lines 3-8). The Applicant testified that he understood his constitutional rights, and was aware that by entering a guilty plea he was voluntarily waiving those rights. (Tr. p. 3, line 11 - p. 4, line 22). The Applicant further testified that he understood that by pleading guilty he was admitting that the charge against him was true, (Tr. p. 5, lines 23-24), and later stated that he shot the victim once while he was running away, and then came back around thirty to forty-five minutes later and shot him again. (Tr. p. 18, lines 7-20). Finally, the Applicant actually admitted his guilt to the crime of murder. (Tr. p. 24, lines 2-3)

The Applicant testified that he did not want a jury trial. (Tr. p. 5, line 25 - p. 6, line 1). The Court advised the Applicant of the possible sentences he was facing, as well as the collateral consequences of a conviction, and the Applicant replied that he understood. (Tr. p. 6, lines 2-22). Applicant offered an apology to the family. (Tr. p. 21, lines 1-3). Further, Applicant testified that he was satisfied with the services of his attorney. (Tr. p. 22, lines 18-25).

With respect to this claim, this Court finds that the Applicant has failed to meet his burden of proof. This Court finds, based on the testimony presented at the PCR Hearing, as well as the record of the Guilty Plea Proceeding, that the Applicant was fully informed of the nature of the proceedings against him and the consequences of entering a guilty plea. This Court further finds that the Applicant made the decision to enter such a plea freely and voluntarily. As such, this Court finds that the Applicant has proven neither ineffective assistance of counsel nor resulting prejudice. Accordingly, this claim is denied and dismissed.

*All Other Claims*

Except as discussed above, this Court finds that the Applicant affirmatively waived the remaining allegations set forth in his application at the hearing. A waiver is a voluntary and intentional abandonment or relinquishment of a known right. Janasik v. Fairway Oaks Villas Horizontal Property Regime, 307 S.C. 339, 415 S.E.2d 384 (1992). A waiver may be express or implied. "An implied waiver results from acts and conduct of the party against whom the doctrine is invoked

> from which an intentional, relinquishment of a right is reasonably inferable." Lyles v. BMl, Inc., 292 S.C. 153, 158-59, 355 S.E.2d 282 (Ct. App. 1987). The Applicant's failure to address these issue[s] at the hearing indicates a voluntary and intentional relinquishment to his right to do so. Therefore, any and all remaining allegations are denied and dismissed.
>
> **CONCLUSION**
>
> Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

App. 116-20. Petitioner did not file a Rule 59(e), SCRCP, Motion to Alter or Amend; he timely filed a Notice of Appeal. ECF No. 27-2 at 1. Petitioner, represented by Elizabeth Franklin-Best of the South Carolina Commission on Indigent Defense, filed a *Johnson*[2] petition for writ of certiorari arguing, "trial counsel was ineffective for failing to persuasively argue to suppress the gun, resulting in petitioner's entering his guilty plea[.]" ECF No. 27-3. Additionally, Petitioner filed a pro se brief arguing:

1. Trial counsel was constitutionally ineffective to the point Petitioner was prejudiced by counsel's failure to properly argue for suppression of evidence that was gained as a result of violations of Petitioner's Fourth Amendment rights against an unreasonable search and seizure; and

2. Petitioner's guilty plea was not knowingly, voluntarily, or intelligibly given.

ECF No. 27-4. On September 22, 2011, the South Carolina Supreme Court denied certiorari. ECF No. 27-5. The remittitur was issued on October 10, 2011. ECF No. 27-6.

---

[2] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

III.   Discussion

   A. Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus, quoted verbatim:

> GROUND ONE: Trial Counsel was ineffective and caused prejudice to Petitioner When failure to properly argue for suppression of evidence.
>
> Supporting Facts: C.E. Gable, Jr., Chief Deputy with the McCormick County Sheriff's Office of McCormick, S.C. testified that he was involved in the search and seizure of the pistol at the residence of [Isabelle Barksdale], Chief Gable also stated that he was aware that the resident at that property, was Isabelle Barksdale, the [Petitioner's sister] and not that of Travis Barksdale the son of [Petitioner].[3] Tr. Pg. 11.
>
> Dan Choate, a special Agent with the South Carolina State Law Enforcement Divisions and whose's (sic) assistance was requested by Chief Deputy Gable testified that he did not know Travis Barksdale lived at the location to be searched or not; But, that he never obtained a Search Warrant from Ms. Barksdale, Tr. Pg. 18.
>
> Robert shorter who at the time was a Deputy Sheriff in McCormick County Sheriff's Office, testified that Isabelle Barksdale and Travis' Grandmother Louise Letman encouraged Travis Barksdale to cooperate with (Deputies) during their visit at Isabelle Barksdale's residence and that Travis Barksdale subsequently led them to the "Gun" though they had no Warrant, Tr. Pg. 31-33.
>
> Isabelle Barksdale testified that she never gave her permission to search her Property and that her Mother [Louise Letman] was out of town [Daytona Beach] at the time of the search. Ms. Barksdale also testified that Travis Barksdale did not live on her Property and he had not (sic) authority to give other people permission to search her property. Tr. Pg. 37-38.
>
> Travis Barksdale under direct examination testified that he lived in Augusta Georgia, at 1614 George Street, Tr. Pg. 23.
>
> Louise Letman testified that she was out of town the date of the search and never gave anyone permission for a search and never saw a search warrant. Tr. Pg. 41.

---

[3] Petitioner referred to an attached continuation of facts. Although the attachment is labeled Ground Two, the facts support Petitioner's claims in Ground One.

7

Trial Counsel argument in this case for suppression of the Video-tape and Handgun basically boiled down to a single statement: "We submit that under the doctrine of fruit of the poisonous tree that both the confession should be suppressed as well as the warrantless search at the residence", Tr. Pg. 43

The Trial Court ruled the video taped statement and handgun admissible, Tr. Pg. 45-48.

GROUND TWO: Petitioner was denied the right of an attorney when requested before police interrogation.

Supporting Facts: The Petitioner assert (sic) that every time he requested an attorney the police officer would re-adjust the tape recorder and deny him asset (sic) to an attorney. Tr. Pg. 36-37, 39, 40-41. See attached transcripted Pages witnesses Testimony of facts that Petitioner ask (sic) for an attorney but was told one could not be provided for him.

GROUND THREE: Violation of Search and Seizure Clause, A Warrantless Search and Seizure Without a Warrant.

Supporting Facts: Chief Deputy C.E. Gable, Jr., of the McCormick County Sheriff's Office, testified, that there was never any type of warrant obtained to enter the Property of Ms. Barksdale or Ms. Letman, and the Ms. Barksdale never gave Permission or Consent to enter or Search the Property, Tr. Pg. 12.

Chief Deputy Gable also testified, that he was involved in the Search and Seizure of the "Pistol" and that he was aware that the actual resident at that property was Isabelle Barksdale's the [Petitioner's Sister] and not that of Travis Barksdale the [Petitioner's Son], Tr. Pg. 11

Dan Choate, a special Agent with the South Carolina State Law Enforcement Division and whose's (sic) assistance was requested by chief Deputy Gable testified that he did not know Travis Barksdale lived at the location to be searched or not; But, that he never obtained a Search Warrant or Consent to Search from Ms. Barksdale, Tr. Pg. 18.

Robert Shorter who at the time was a Deputy Sheriff in McCormick County Sheriff's Office, testified that Isabelle Barksdale and Travis's Grandmother Louise Letman encouraged Travis Barksdale to cooperate with (Deputies) during their visit at Isabelle Barksdale's residence and that Travis Barksdale subsequently led them to the "Gun" though they had no Warrant, Tr. Pg. 31-33.

8

> Isabelle Barksdale testified that she never gave her permission to search her Property and that her Mother [Louise Letman] was out of town [Daytona Beach] at the time of the Search. Ms. Barksdale also testified that Travis Barksdale did not live on her Property and he had no authority to give other people permission to search her Property. Tr. Pg. 37-38.
>
> Travis Barksdale under direct exam. testified that he lived in Augusta Georgia, at 1614 George Street, Tr. Pg. 23.
>
> Louise Letman testified that she was out of town the date of the search and never gave anyone permission for a search and never saw a search warrant. Tr. Pg. 41.
>
> Trial Counsel argument in this case for suppression of the Video-tape and Handgun basically boiled down to a single statement: "We submit that under the doctrine of fruit of the poisonous tree that both the confession should be suppressed as well as the warrantless search at the residence", Tr. Pg. 43. The Court ruled the videotaped statement and handgun admissible, Tr. Pg. 45-48.
>
> GROUND FOUR: Petitioner's guilty plea was involuntary and unknowing because his attorney failed to persuasively argue that the gun should have been suppressed.
>
> Supporting Facts: Had counsel properly argue[d] for suppression of the evidence due to Travis Barksdale lack of necessary common authority over the property to be able to legally consent to a warrantless search and seizure, also the suppression of the videotaped statement was required because it was a result of the illegal search and seizure. Had the court that evidence, the Petitioner would have continue with the trial, therefore Counsel's ineffectual argument was just wordplay without merit and fail to provide the Court with any legal basis to rule in Petitioner's favor.

ECF No. 1.

    B. Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### C. Habeas Corpus Statute of Limitations

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claim is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). The AEDPA provides that "[a] 1-year period of limitation shall apply to an

application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute further provides that "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

IV. Discussion

A. Petitioner's Application Is Time-Barred

Respondent argues that Petitioner's habeas petition should be dismissed because all of Petitioner's claims are barred by the statute of limitations. ECF No. 27 at 17. Petitioner contends that Respondent's argument is improper and the one-year statute of limitation does not bar his claims. ECF No. 35 at 5.

The AEDPA one year period of limitation begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The United States Supreme Court recently interpreted the two prongs of 28 U.S.C. § 2244(d)(1)(A) as follows:

> The text of § 2244(d)(1)(A), which marks finality as of "the conclusion of direct review or the expiration of the time for seeking such review," consists of two prongs. Each prong—the "conclusion of direct review" and the "expiration of the time for seeking such review"—relates to a distinct category of petitioners. For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires. We thus agree with the Court of Appeals that because [petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.

*Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) (clarifying the Court's prior cases concerning 28 U.S.C. § 2244(d)(1)(A)).

Here, it is undisputed that Petitioner did not seek review by the United States Supreme Court. Accordingly, the AEDPA's one-year statute of limitations began running "at the expiration of the time" for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). As in *Gonzalez*, Petitioner's judgment of conviction became final "when his time for seeking review with the State's highest court expired." *Gonzalez*, 132 S. Ct. at 653-54.[4]

Review of the record indicates Petitioner's federal habeas petition was not timely filed. As previously summarized, Petitioner did not seek appellate review of his guilty plea or sentence imposed on August 1, 2006; therefore, Petitioner's conviction became final ten days after his sentence was imposed on August 11, 2006. *See* Rule 203(b)(2), SCACR (stating that in a criminal action a notice of appeal must be served on all respondents within ten days after the sentence is imposed). Petitioner subsequently filed his PCR application on June 18, 2007, which tolled the one-year limitations period. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). When Petitioner filed his PCR application, 310 days had elapsed,

---

[4] The Court's *Gonzalez* decision makes it clear that, for a petitioner who did not seek review by filing a petition for writ of certiorari in that Court, no time is added to the expiration of the "time for seeking review from the State's highest court." 132 S. Ct. at 653-54. The Court contrasted its finding as to § 2244's statute of limitations with its cases interpreting the statute of limitations found in 28 U.S.C. § 2255(f)(1), which is applicable to *federal* prisoners seeking habeas relief. *See* 132 S. Ct. at 653 (noting *federal* judgment of conviction begins "'when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari,' or, if a petitioner does not seek certiorari, 'when the time for filing the certiorari petition expires.'") (quoting *Clay v. United States,* 537 U.S. 522, 527 (2003)).

leaving 55 days within which Petitioner could timely file a federal habeas petition. The statute of limitations remained tolled until the South Carolina Supreme Court issued the remittitur in Petitioner's PCR appeal on October 10, 2011. Petitioner did not file this habeas action until January 13, 2012, *see* ECF No. 1-5 at 1, which was 94 days after his PCR claim was no longer pending and 39 days after the statute of limitations had run. Petitioner's habeas petition is untimely under 28 U.S.C. § 2244(d) and must be dismissed.[5]

B. The Statute of Limitations Should Not Be Equitably Tolled

The AEDPA's statute of limitations is subject to equitable tolling, which could, in effect, extend the final date for filing a habeas petition. *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000). The Fourth Circuit has underscored the very limited circumstances in which equitable tolling of the AEDPA's limitations period will be permitted, holding that a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

---

[5] Petitioner asserts he received the remittitur on October 18, 2011 from the prison mailroom. ECF No. 1 at 13. Even if the court considered the PCR matter pending through that date, this Petition remains untimely.

13

*Harris*, 209 F.3d at 330. The respondent bears the burden of asserting the AEDPA's statute of limitations, *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002); the petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the equitable-tolling doctrine, *Rouse*, 339 F.3d at 246.

In 2010, the United States Supreme Court considered the issue and also held that § 2244 "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010); *cf. Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005) (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in *Pace* that the statute would be equitably tolled "only if [the petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418)).

Here, Petitioner has not offered any argument as to why the statute of limitations should be tolled, and none is readily apparent on the record. Instead, Petitioner argues that his judgment was not final until he received the Remittitur from his appeal of his PCR hearing. ECF No. 35 at 5. Petitioner therefore argues, incorrectly, that he had one year from October 18, 2011 to file his habeas action. *Id.* Petitioner has failed to satisfy his burden of demonstrating entitlement to equitable tolling. Accordingly, equitable tolling of the statute of limitations is not merited. Based upon the foregoing, the Petition was not timely filed, and it is barred by Section 2244(d)(1).[6]

---

[6] Because the court finds that the statute of limitations bars Petitioner's § 2254 petition, it is precluded from addressing the merits of his claims.

V.  Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 28, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

September 28, 2012  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**